SHILLITO REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN SHILLITO CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6186, 6187.    Promulgated October 8, 1927.

1. Petitioners held to have been affiliated during the taxable years.

2. Additions to a business building, made in the process of remodeling, *held* to have a useful life equal to the remaining useful life of the building of which they constituted an inseparable part.

*H. A. Mihills, C. P. A.*, for the petitioners.
*J. Harry Byrne, Esq.*, for the respondent.

The respondent asserts deficiencies in income and profits taxes as to the Shillito Realty Co. for the fiscal years ended March 31, 1918, 1919, and 1920, in the respective amounts of $12.95, $3,744.94, and

$3,198.65, and for the John Shillito Co. for the fiscal years 1919 and 1920, in the respective amounts of $24,126.42 and $26,633.42, and advised petitioners of an overassessment for the fiscal year 1918 in the amount of $9.81. The issues for consideration and decision are (1) whether the petitioners were affiliated during all the taxable years involved; (2) determination of intangible values acquired by the John Shillito Co. in exchange for shares of its capital stock at date of its incorporation; (3) increase of taxable income of the John Shillito Co. on account of its payment of Federal taxes for the Shillito Realty Co. in certain years; (4) determination of depreciation deductions with respect to " store fixtures " and " cost of remodeling store building," properly allowable to the John Shillito Co. for each of the taxable years; and (5) determination of depreciation on store building owned during the taxable years by the Shillito Realty Co. It was agreed by the parties that the two proceedings should be consolidated for hearing and decision.

### FINDINGS OF FACT.

The John Shillito Co., hereinafter sometimes designated as the Store Company, is an Ohio corporation that was organized in 1882, as the successor of a partnership that was established about 1830. Its principal office is at Cincinnati, where it conducts a retail department store. Prior to the year 1914 it owned in fee the property, in which its business was conducted at Race and Seventh Streets in Cincinnati, consisting of land and a six-story building with basement and subbasement, constructed of brick and wood, and classified by fire underwriters as a slow combustion structure.

In the year ·1914, for the purpose of converting a portion of its fixed assets into liquid working capital, the Store Company caused the Shillito Realty Co., hereinafter sometimes designated as the Realty Company, to be incorporated with authorized capital in the amount of $1,200,000, divided equally into preferred and common stock, all of which had full voting power. Upon the completion of such incorporation the Store Company deeded the Realty Company the land and buildings heretofore described and received in payment therefore $600,000 in cash, and all the common stock of the Realty Company of the par value of $600,000. The cash involved in this transaction was secured by the sale of the preferred stock of the Realty Company to stockholders of the Store Company and to the public.

Following its acquisition of the real estate, as above set forth, the Realty Company made a perpetual lease of the property so acquired to the Store Company. The consideration for such lease was the payment of an annual rental in the amount of $60,000, and the payment by the lessee of all taxes, insurance, and assessments against the property and of all the other operating expenses of the lessor.

The lease also provided that the lessee should have an option to repurchase the property after 10 years for the amount of $1,200,000. On June 25, 1918, the Realty Company, pursuant to a formal request by the Store Company, reduced the annual rental for the store property to $36,000.

The officers and directors of the petitioners during the taxable years were as follows:

| Officer's title | Shillito Company | Realty company |
|---|---|---|
| President | Stewart Shillito | Stewart Shillito. |
| Vice president-treasurer | W. A. Hopple | |
| Vice president | John Shillito | |
| Secretary | Wm. E. Kreidler | |
| Secretary-treasurer | | W. A. Hopple. |
| Assistant secretary | J. W. Noekler | |
| Assistant secretary | J. M. Robinson | |
| Directors | Stewart Shillito | Stewart Shillito. |
| | W. A. Hopple | W. A. Hopple. |
| | John Shillito | C. L. Harrison. |
| | Wm. E. Kreidler | M. T. Watts. |
| | Morris Wickersham | Wm. Worthington. |
| | Chas. P. Taft | |
| | C. B. Wright | |

The stockholders and stockholdings of the petitioners as at February 1, 1917, were as follows:

| No. | Name | Relation to other stockholders and official connection with company | John Shillito Co. Common shares held | Per cent of total | Shillito Realty Co. Common shares held | Preferred shares held | Per cent of total |
|---|---|---|---|---|---|---|---|
| 1 | Besuden, Mathilda | | 35 | 0.35 | | 355 | 2.958 |
| 2 | Brown, James W | | 5 | .05 | | 25 | .208 |
| 3 | Hanson, Charles W | | 50 | .50 | | 100 | .833 |
| 4 | Heine, Emilie L | | 150 | 1.50 | | 60 | .5 |
| 5 | Herancourt, Wm. H | | 10 | .10 | | 30 | .25 |
| 6 | Hopple, W. A | Vice president, treasurer, director, John Shillito Co.; secretary-treasurer, director, Shillito Realty Co. | 275 | 2.75 | | 1 | .009 |
| 7 | Irwin, Ballman & Co | | 202 | 2.02 | | 277 | 2.308 |
| 8 | Irwin, Chas. A | | 5 | .05 | | 3 | .025 |
| 9 | Johnson, Louis | Employee, John Shillito Co. | 10 | .10 | | 10 | .083 |
| 10 | Kearns, Margaret | | 10 | .10 | | 3 | .025 |
| 11 | Moore, Mary | | 10 | .10 | | 3 | .025 |
| 12 | Schulz, Emil | Employee, John Shillito Co. | 1 | .01 | | 5 | .042 |
| 13 | Shillito, Beatrice | Daughter of No. 19 | 15 | .15 | | 215 | 1.792 |
| 14 | Shillito, Eliz. G | Daughter of No. 19 | 15 | .15 | | 142 | 1.183 |
| 15 | Shillito, John | Vice president, director, The John Shillito Co.; son of No. 19. | 240 | 2.40 | | 90 | .75 |
| 16 | Shillito Co., The John | | | | 6,000 | | 50 |
| 17 | Shillito, Mary | Daughter of No. 19 | 15 | .15 | | 152 | 1.267 |
| 18 | Shillito, Mildred T | Daughter of No. 19 | 15 | .15 | | 186 | 1.55 |
| 19 | Shillito, Stewart | President, director, both companies; father of Nos. 13, 14, 15, 17, 18. | 5,515 | 55.15 | | 28 | .234 |
| 20 | Strader, Marshall | | 10 | .10 | | 10 | .083 |
| 21 | Windisch, Chas. F | | 25 | .25 | | 100 | .833 |
| 22 | Windisch, Wm. A | | 100 | 1.00 | | 64 | .533 |
| 23 | Wuenker, Helen | | 3 | .03 | | 3 | .025 |
| | Total stock held by same interests. | | 6,716 | 67.16 | 6,000 | 1,862 | 65.516 |

The only business of the Realty Company was the ownership of the property used by the Store Company, the collection of the rental therefor, and the declaration and distribution of dividends resulting solely from the receipt of such rental. Its office was in the office of the Store Company, and, during the taxable years, its officers and directors were at all times the nominees of Stewart Shillito. At each of its stockholders' meetings the stock of the minority interests was voted by proxies given to a proxy committee of which John Shillito was chairman.

Good will, trade-marks, and trade-brands, acquired in exchange for shares of capital stock by the John Shillito Co. at the date of its incorporation, had a value of $125,000.

In his audit of the income and profits-tax returns of the John Shillito Co. for the years 1919 and 1920, the Commissioner held that such company had deducted the tax paid on account of the Realty Company in the respective amounts of $4,320 and $1,020 from its gross income for each of such years. No such deductions were made.

The store building owned by the Realty Company during the taxable years had a value of $350,000 at March 1, 1913, and, at that date, had 20 years of remaining useful life. This building was remodeled subsequent to the year 1914, but prior to the taxable year, at a cost to the John Shillito Co. in the amount of $206,516.21. The furniture and fixtures owned by the John Shillito Co. and used by it in its trade or business, were carried on the books at the following costs: January 31, 1918, cost to date $236,027.12, addition during the year ended January 31, 1919, $4,344.99; January 31, 1919, cost to date $240,372.11, addition during the fiscal year ended January 31, 1920, $22,735.86; total cost at January 31, 1920, $263,107.97.

### OPINION.

LANSDON: The issues to be determined are fully set forth in our preliminary statement, and will be considered and decided in the order stated. The evidence is conclusive that the Realty Company was the creature of the Store Company, which had caused it to be incorporated solely for the purpose of acting as its agent in converting fixed assets into liquid working capital for use in its business. During the taxable years the Store Company owned all the common stock of the Realty Company. Such stock had one-half the voting power. Considerable percentages of the preferred stock of the Realty Company were owned by the officers and directors of the Store Company, and much of the remainder by its employees, the relatives, and close personal friends of the principal stockholders. Only an inconsiderable amount was in the hands of persons who properly may be regarded as outside interests. The circumstances under which the stock of the petitioners was held are very similar

to the facts in *Appeals of Midland Refining Co.*, 2 B. T. A. 292 and 296.

The conditions in the instant proceeding are almost exactly on all fours with the facts in *Appeal of Abattoir Realty Co.*, 3 B. T. A. 415, in which we said:

The facts set forth disclose a complete unity of the enterprise, which was inherent in the creation of the Realty Co. and has remained so since. The Cincinnati Co. has assumed the material responsibilities of the Realty Co. and dominates it completely. It owns all the common stock and its stockholders own two-thirds of the preferred. The directors are such persons as the Cincinnati Co. selects. The right of preferred stockholders to elect a majority of the directors is controlled by the Cincinnati Co. and its stockholders. The remaining preferred stockholders, even were they hostile to the Cincinnati Co. and its interests and were to vote or act in unison, could not be effectively adverse to the Cincinnati Co. But, so far as this record shows, there is no diversity of interest. Taking all the circumstances together, we are of opinion that the two corporations were affiliated within the taxable years in question.

In the light of all the evidence, and upon authority of our opinions cited, *supra*, we must hold that the petitioners were affiliated during the taxable years.

The parties have agreed and stipulated that the amount of $125,000 shall be included in the invested capital of the John Shillito Co. for each of the fiscal years ended January 31, 1919, and January 31, 1920, respectively, as representing the value of intangibles acquired from its predecessor in 1882. This amount, therefore, should be included in the statutory invested capital of such company for each of the taxable years, subject to the limitations of section 326(a)(4) of the Revenue Act of 1918.

The parties stipulate that the Store Company took no deduction for taxes paid on account of the Realty Company for the years 1919 and 1920, in the respective amounts of $4,320 and $1,020. The respondent, therefore, erred in adding such amounts to the income of the Store Company.

The John Shillito Co. owned depreciable store fixtures and furniture during the taxable years in the amounts set forth in our findings of fact. The petitioners admit that an annual depreciation rate of 5 per cent on the cost of this property is reasonable and we find, therefore, that deductions from income for the years involved should be computed at that rate on costs as set forth in our findings of fact.

The evidence discloses that the store building owned by the Realty Company was constructed about 1878, and was continuously kept in good repair. We have found that the value of this building at March 1, 1913, was $350,000, and that between that date and the first of the taxable years, it was remodeled at a cost of $206,516.21. As the remodeled parts are inseparable from the original structure, we are of the opinion that such additions can have no longer useful life

than the building of which they are a part. The evidence convinces us that the entire building, even after it was remodeled, was far from modern and that, as a whole, its useful life could not be more than 20 years from March 1, 1913. The petitioners are entitled to depreciate the 1913 value of this building and the cost of remodeling on the basis of a term of useful life ending not later than March 1, 1933.

*Judgment will be entered on 10 days' notice, under Rule 50.*