D. S. BRANDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20124. Promulgated March 1, 1928.

*H. H. Hunt, Esq.*, for the petitioner.
*William H. Lawder, Esq.*, and *A. H. Fast, Esq.*, for the respondent.

OPINION.

MORRIS: The sole issue herein is whether D. S. Brandon & Co. and the Oconee Milling & Grain Co. were affiliated within the meaning of the Act and, therefore, entitled to file a consolidated return for the fiscal year ended June 30, 1920.

Section 240 (b) of the Revenue Act of 1918 provides:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

While the corporate structure of Oconee was somewhat defective because of its failure to enact its by-laws, issue its stock, and hold stockholders' meetings, etc., no issue was raised as to whether it was a corporation within the meaning of the above provision.

Let use see, therefore, if the parent company "owns directly or controls through closely affiliated interests * * * substantially all the stock" of Oconee. The parent company had an investment of $16,000 in Oconee, or 80 per cent of the total amount invested in that company, which is not a sufficient sum to say that it owns "directly * * * substantially all the stock" of Oconee.

If it did not own "directly," did it have sufficient control over the stock of Blackshear to say that it controlled "through closely affiliated interests or by a nominee or nominees substantially all of the stock" of Oconee?

What constitutes an affiliation within the meaning of the statute depends upon the facts of each individual case. *Appeal of Old Colony R. R. Co.*, 1 B. T. A. 1067; *Appeal of Isse Koch & Co.*, 1 B. T. A. 624; *Appeal of Huntington & Clearfield Telephone Co.*, 1 B. T. A. 731; *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Appeal of Mahoning Coal R. R. Co.*, 4 B. T. A. 923.

Oconee, prior to its incorporation on June 25, 1918, was a copartnership of which Blackshear was a member. In October, 1917, Blackshear enlisted in the United States Army and embarked for France shortly thereafter, leaving instructions with Brandon to operate the business, and, while he left no power of attorney, he did leave Brandon in complete and effective control, not only of the business, but of his (Blackshear's) interest therein. After Blackshear's departure, Brandon, for reasons hereinbefore stated, incorporated Oconee, and, Blackshear having a $4,000 interest in the business, that amount of stock was allotted to him and $16,000 to the parent company, which had advanced money to Oconee to the extent of $20,500, and these amounts were so recorded in the books of account of the corporation.

When Blackshear returned from the Army in 1919 he made no attempt to exercise any control over Oconee. At the hearing of this proceeding Blackshear appeared as a witness, and when asked in whose hands he left control of his interest in Oconee, he said, " D. S. Brandon & Company."

While we recognize that mere control of a business, in the sense that its affairs are conducted without interference from minority

stockholders, is not sufficient in itself to bring it within the meaning of the statute, the peculiar facts and circumstances of this case must be borne in mind in construing the extent of the parent company's control, through Brandon, over the affairs of Oconee. It must be remembered that when Blackshear departed for the Army the business was not then a corporation, and therefore the witness, not having in mind a corporation, could not have used language applicable to the assignment of control in a corporate enterprise. He gave complete control of the business, and his interest therein, to the Brandon Company when he departed for the Army, and while it is true Blackshear returned from the Army at the beginning of the fiscal period under consideration, it is clear that the control placed in the parent company was never in any manner repealed or interfered with. Blackshear can not be said to have parted with his legal control over his stock ownership, but legal control is not necessary where the control exercised through closely affiliated interests is just as effective. *Appeal of Huntington & Clearfield Telephone Co., supra.* As an illustration of the utter lack of interest taken by Blackshear in the business or his control exercised over it, he was asked, " What knowledge did you have of the incorporation of Oconee Milling & Grain Company? " and he replied, " I had none, sir."

Considering the facts and circumstances hereinbefore related, we are of the opinion that direct ownership of 80 per cent of the stock of Oconee by the parent company, together with the control here enjoyed over the remaining 20 per cent owned by Blackshear, affiliates these two corporations within the meaning of the Act and the decided cases *supra.*

Reviewed by the Board.

> *Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*

LITTLETON, MARQUETTE, TRAMMELL, and ARUNDELL dissent.