RICHFIELD OIL CO. AND OLINDA GASOLINE CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15799, 19077. Promulgated October 16, 1928.

*Claude I. Parker*, Esq., and *Ralph W. Smith*, Esq., for the petitioners.
*Shelby S. Faulkner*, Esq., for the respondent.

## OPINION.

MILLIKEN : We have stated in a number of these cases that a mere percentage of stock ownership does not control the decision of these questions, but in connection with other facts it may indicate and establish a complete control of substantially all of the stock of two or more corporations.

In these proceedings it appears that five persons owned all of the stock of the Richfield Oil Co. and that the same persons owned 80.20 per cent of the stock of the Olinda Gasoline Co. Of the remaining 19.80 of Olinda stock, 18.80 was owned by Vordermark and his wife, and 1 per cent was owned by E. A. Sawyer. From the organization of the Olinda, in 1913, to 1925 its affairs and stock have been under the practical control and domination of the Richfield stockholders. They dictated the officers of the Olinda, fixed the salaries, and disposed of its entire product on terms fixed by them to the Richfield Company at prices considerably below the market price. There was never any objection thereto by any stockholder, and J. F. Vordermark, the holder or representative of all the minority shares except five, actively participated therein as president-manager and voted his stock in accordance with the plans of the majority. He testified that it was to his interest to do so as he desired to retain his official position and salary.

Vordermark, while a stockholder and president-manager of the Olinda Company, was in reality an employee, and his position and the value of his stock depended on the control of the majority interests represented by the Richfield stockholders. The Olinda Company was merely a department of the Richfield Company in which

it owned 80.20 per cent of the stock and controlled 18.80 per cent standing in the name of Vordermark and wife.

In *Isse Koch & Co.*, 1 B. T. A. 624, in defining the word "control," the Board said:

The word "control" as defined in Funk & Wagnall's New Standard Dictionary, means "To exercise a direct, a restraining or governing influence." Webster defines it as "To exercise restraining or directing influence over; to dominate; hence to hold from action; to curb; subject; overpower." The object sought to be accomplished by Congress, in enacting section 240 of the Revenue Act of 1918, was to tax as a business unit what really was a business unit, and to prevent the component parts thereof from evading taxation by means of inter-company transactions. Since Congress intended to require two or more corporations, where substantially all their stock "is owned or controlled by the same interests," to file a consolidated return in order to prevent them from evading income tax, we can find no reason for holding that the "control" contemplated by the statute means only legal control; that is, control enforceable by legal means, for control not arising or flowing from means legally enforceable may be just as effective in evading taxation as if founded on the most formal and readily enforceable legal instrument. There is no authority in the section of law referred to or in its context, so far as we can see, for assuming that Congress intended to use the word "control" in other than its ordinary and accepted sense. On the other hand, we believe that a proper construction of the statute, if it is to serve the purpose for which it was intended, requires us to hold that the "control" mentioned therein means actual control, regardless of whether or not it is based upon legally enforceable means. The control, however, must be shown to be a genuine and real control actually exercised, and it can not be established by mere assertions or agreements between majority and minority stockholders unsupported by facts. Potential control of stock is not sufficient in itself to justify consolidation. No definite rule, applicable to all cases, can be laid down for recognizing control. Each case must, therefore, be considered and decided upon its own facts and surrounding circumstances.

In the instant proceedings we think that a real control actually exercised has been shown over that part of the Olinda stock not actually owned by the Richfield stockholders. This has been manifested through a period of 12 years and during the taxable years in question. While not resting upon any legal instrument, or legally enforceable means, the influence over Vordermark and his position proved sufficiently potent for an exercise of this control for 12 years. We think that this case comes within the purview of section 240(b) of the Revenue Act of 1918, and that substantially all of the stock of the two corporations was owned or controlled by the same interests. Cf. *Midland Refining Co.*, 2 B. T. A. 292; *D. S. Brandon*, 10 B. T. A. 1118; *Boker Cutlery Hardware Co.*, 12 B. T. A. 1405; *Metasap Chemical Co.*, 12 B. T. A. 1402.

The Richfield Oil Co. and the Olinda Gasoline Co. were affiliated during the taxable years 1918 and 1919 and are entitled to file consolidated returns.

*Judgment will be entered under Rule 50.*