Jos. Denunzio Fruit Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 14753.   Promulgated July 16, 1929.

*Theodore B. Benson, Esq.*, for the petitioner.
*Harry LeRoy Jones, Esq.*, for the respondent.

## OPINION.

LITTLETON: The petitioner's evidence sustains the Commissioner's determination that the petitioner did not control the 50 shares of stock of the Spivey Packing Co. which it did not own. The direct examination of petitioner's witnesses, Mark Denunzio, Fred Scholtz, and Charles Scholtz, appears to indicate a sort of vague verbal agreement among the incorporators of the Spivey Packing Co. to keep the stock closely held—not to be sold to the public, but such an "understanding" falls short of constituting control of the voting rights of the stock. It does not appear that E. T. Meares was a party to such an understanding or had any knowledge of its existence.

The following testimony of petitioner's witnesses shows the total absence of control of the stock of the Meares brothers:

Cross-examination of Mark Denunzio:

Q. Did the stock certificates have any provision as to an agreement, or was there any agreement, express or implied, as to how the stock could be voted?
A. No, sir.
Q. Was there any provision that it should be purchased by the corporation or by the other stockholders in case Mr. Meares or his brother should want to get out of the corporation?
A. I don't think so.

Cross-examination of Fred Scholtz:

Q. The Joseph Denunzio Fruit Company did not have any control of the 50 shares of stock owned by Mr. Meares or his brother, did it?
A. As directors, we had control of all of it.
Q. You mean the business?
A. Yes, sir.
Q. But not of Mr. Meares' individual stock?
A. Not of his individual stock.
Q. You didn't have any control whatever of that 50 shares of stock?
A. No, sir.

Cross-examination of Charles Scholtz:

Q. There was nothing ever said about his voting rights?
A. There was nothing come to a vote.

Q. And he had as perfect a right to vote his 50 shares as you had to vote your nine shares?

A. If it came to a vote, more than likely he would.

Q. Was there any other agreement, other than this verbal agreement not to sell stock on the outside, concerning the stock of Mr. Meares?

A. No; no other that I recall.

Q. Was or was not the Joseph Denunzio Fruit Co. obligated to buy the stock of Mr. Meares if Mr. Meares wanted them to take it?

A. Nothing said about that.

Q. There was no agreement regarding stock or voting rights other than this verbal agreement not to sell stock on the outside?

A. I don't recall anything.

Q. Is it not a fact that there wasn't any other agreement?

A. None that I recall.

There were intercompany transactions between petitioner and the Spivey Packing Co. and the latter, as above indicated, appears to have been organized for the purpose largely of selling or supplying the former with citrus fruits. The evidence, however, shows that the petitioner's purchases from the Spivey Packing Co. amounted to less than one-half of the latter's sales, and the answer of petitioner in the affiliation questionnaire filed by petitioner with the Commissioner shows its transactions with the Spivey Packing Co. were on a market basis and that Manager Meares of the Spivey Packing Company " had full authority to buy, sell and make prices."

In *Adaskin-Tilley Furniture Co.*, 6 B. T. A. 316, 319, we stated:

There is no doubt but that Adaskin had absolute control of the business methods, policies and relation of the two corporations. He dominated and managed the business of each. He settled questions of policy, expediency and methods of operation. He organized both corporations with the understanding that he should have control of the business. We have heretofore held, however, in the *Appeal of Canyon Lumber Co.*, 1 B. T. A. 473, that the control "referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock."

In *D. N. & E. Walter & Co. et al.*, 10 B. T. A. 620, we stated:

* * * The mere fact of family and business relationship standing alone is insufficient to constitute control or warrant persons standing in such relationship constituting the same interests. *Appeal of Goldstein Bros. Amusement Co.*, 3 B. T. A. 408; and intercompany transactions or the absence of them, without the necessary stock ownership or control as provided in the statute, is not sufficient to permit or require affiliation. *Appeal of Greenville Coaling and Export Corporation*, 4 B. T. A. 183.

In *Chattanooga Coke & Gas Co.*, 12 B. T. A. 782, the Board stated:

Although mere mathematical calculations are not the controlling factors in determining whether two or more corporations are affiliated within the meaning of the law, *Stanley Insulating Co.*, 2 B. T. A. 967, the test of the statute is ownership or control of substantially all the stock of the corporations in question, *American Auto Trimming Co.*, 6 B. T. A. 1007, consequently that requirement must be found to have been complied with and all facts evidencing such ownership or control considered.

Ownership of 83⅓ per cent of the stock of the Spivey Packing Co. can not be regarded as ownership of substantially all, and, since the evidence does not convince us that petitioner controlled any portion of the stock of the Spivey Packing Co. owned by others, the corporations were not affiliated within the meaning of section 240 of the Revenue Act of 1921.

*Judgment will be entered for the respondent.*