J. A. FOLGER & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FOLGER ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22212, 30721, 31200, 35147. Promulgated May 13, 1931.

*James S. Y. Ivins, Esq., Joseph H. Brady, Esq.,* and *H. Edwin Nowell, C. P. A.,* for the petitioners.
*Eugene Meacham, Esq.,* for the respondent.

212

OPINION.

Lansdon: First in importance of the issues presented is the petitioners' claim for affiliation with the parent company, which, if sustained, renders all other questions immaterial to this decision. We will, therefore, consider that issue first. The petitioners and the parent corporation are creatures of the Folger interests, which they were organized to serve and from which they derived their names. Except for two shares, all of the common stock of the Folger Estate Company was owned by C. E. L. Folger, Elizabeth M. Folger, and E. B. F. Tibbitts, who, among them, also owned more than 45 per cent (1,600 of the 3,300 outstanding shares) of the common stock of the parent company. These personal holdings, when added to 1,340 shares owned by their corporation (the Folger Estate Company), made these interests 90 per cent one and the same, in so far as the common stock was concerned. Two of these stockholders, between them, also owned 1,576 shares of the stock of the (petitioner) Nevada corporation, which, added to the 3,080 shares owned by the parent company, controlled as above shown, gave them 77.6 per cent control of that company. To these may be added the holdings of E. F. Folger of 9 shares in the parent corporation and one share in the Nevada corporation; also of Emma F. Platt, who owned 100 shares in the parent company and 265 shares in the Nevada corporation. The record shows but three stockholders in the entire group considered, who, during the period mentioned, held stock in less than two of these corporations at the same time; and even then the corporations were so linked together through cross holdings of each other's stock as to make them interdependent upon each other and their business success mutual. One of these stockholders was A. K. Munson, who began work for the Folger organization in 1880 and continued with its successors until his death in 1924. He owned 250 shares of the parent company's stock. Inasmuch as that company owned more than 50 per cent (3,080 out of 6,000 shares) of the Nevada corporation's stock; and, was itself 89.9 per cent owned by the Folger Estate Company and its stockholders, Munson's interests can not be regarded otherwise than as closely affiliated with those companies. The same may be said of R. R. Vail, who began work for the Folger interests in 1880 and continued until his retirement

on pension from the parent company, December 31, 1921. He owned 175 shares of the Nevada corporation's stock. The other of this trio was F. P. Atha, who began with J. A. Folger in 1899, and, upon organization of the Nevada corporation in 1908, was allocated 900 shares of that company's stock and made its vice president and general manager. It seems clear, unless otherwise affected by the preferred stock of the parent company, as we shall later discuss, that both ownership and control of substantially all of the stock of these three corporations were, during the periods involved, so interlocked and unified as to make them an affiliated group within the law, as heretofore construed by this Board and the courts. *Midland Refining Co. (No. 1)*, 2 B. T. A. 292; *Abattoir Realty Co.*, 3 B. T. A. 415; *Shillito Realty Co.*, 8 B. T. A. 665; affd., 39 Fed. (2d) 830; *D. S. Brandon*, 10 B. T. A. 1118; *Boker Cutlery & Hardware Co.*, 12 B. T. A. 1405; *Metasap Chemical Co.*, 12 B. T. A. 1402; *Richfield Oil Co.*, 13 B. T. A. 1050; affd., 42 Fed. (2d) 360; *Great Lakes Hotel Co.* v. *Commissioner of Internal Revenue*, 30 Fed. (2d) 1; *United States* v. *Cleveland, Painsville & Eastern Ry. Co.*, 42 Fed. (2d) 413.

The respondent further contends that during these periods a substantial portion of the parent company's preferred stock was owned by interests outside of the affiliated group and that inasmuch as such stock had equal voting rights with the common stock in the control of that company, such adverse holdings—as he terms them—changed the situation in reference to ownership and control otherwise established through the common stock alone. In reference to this contention, it is obvious that the respondent has overappraised the control that was or could be exercised over all of the stock of this corporation through the outstanding preferred stock. This entire issue was only 2,854 shares, which at no time was more than 1,854 owned by parties outside of the related group. This so-called adverse holding represented at most but 64.96 per cent of the preferred stock, and only 30 per cent of the total voting common plus preferred stock of the company in that year. In 1922 the preferred stock held by outside interests had been reduced through repurchase and retirement to 644 shares; this was 39.17 per cent of the then outstanding preferred stock and slightly less than 14 per cent of the whole voting stock. In 1923, the last of these taxable periods, no preferred stock was owned outside of the Folger interests. Aside from this lack of power in the preferred stock to interfere with the control of the common, the record here shows that the right to vote it was voluntarily delegated by its owners to the president of the parent corporation, who voted it at all stockholders' meetings. This control was further reinforced and made secure by the terms of the stock certificates, which made all preferred stock subject to

call at the pleasure of the corporation at any quarterly dividend period, upon thirty days notice. Such domination, we have held, constitutes control within the statute. Cf. *Detour Dock Co.*, 22 B. T. A. 925, and cases hereinabove cited. In *Bank of Italy*, 13 B. T. A. 1226, this Board allowed affiliation in a case where the dominant corporation owned 85 per cent of all of the stock of another; but was without any control, contractural or otherwise, over the remaining 15 per cent. Our decision in that case was reversed by the United States Circuit Court of Appeals for the Ninth Circuit in a decision rendered on January 26, 1931, which pointed out such lack of control and distinguished it from the cases cited wherein either through options to purchase or proxies, or both, as in this case, the affiliated interests controlled the minority stock. The control lacking in the *Bank of Italy* case, *supra*, we think, is abundantly established here and it is obvious that the situation meets the requirements of the statute. *Shillito Realty Co., supra; Great Lakes Hotel Co. v. Commissioner of Internal Revenue, supra; United States v. Cleveland, Painsville & Eastern Ry. Co., supra;* and *Commissioner of Internal Revenue v. Richfield Oil Co., supra.*

We hold, therefore, that these petitioners and the J. A. Folger Company of California were affiliated corporations for Federal tax purposes in and during the taxable periods involved and that their contentions in such respect must be sustained.

In view of our findings on this first issue, the remaining assignments of error need not be considered.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MORRIS, SMITH, and MURDOCK dissent on the question of affiliation.