*Decision will be entered under Rule 50.*

NEW ENGLAND POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE CONNECTICUT RIVER POWER COMPANY OF NEW HAMPSHIRE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BELLOWS FALLS POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18591–18593, 29104–29106. Promulgated January 15, 1932.

196

*Bartlett Harwood, Esq.*, and *Arthur H. Weed, Esq.*, for the petitioners.

*Elden McFarland, Esq.*, and *Arthur Clark, Esq.*, for the respondent.

204

OPINION.

ARUNDELL: At the outset we must consider the suggestion of lack of jurisdiction in the Connecticut River Power Company case, Docket

No. 18591, in so far as the year 1918 is concerned. The original return, a consolidated return, showed no tax due from this company separately. On March 15, 1924, the respondent, after refusing to allow affiliation, assessed against this petitioner $175,183.43. Abatement claim was filed, which was allowed for $144,299.28 and rejected to the extent of $30,884.15. This latter amount was satisfied to the extent of $20,834.51, partly by credit and partly by payment, and against the balance of $10,049.64 petitioner filed a claim in abatement. Correct tax liability was finally determined by respondent to be $29,736.04, and, by reason of the unabated portion of the March, 1924, assessment in the amount of $30,884.15, respondent found an apparent overassessment of $1,148.11. The net result of this is that the respondent is asserting a claim for taxes for the year 1918 in the amount of $8,901.53. In other words, he is asserting a deficiency and not finding an overassessment as alleged. The determination was made in the letter of May 22, 1926, and we have jurisdiction. Section 283(e), Revenue Act of 1926.

## Statute of Limitations.

This issue is raised with respect to the year 1918 in Docket No. 18591, and as to 1919 in Docket Nos. 18591, 18592 and 18593.

The 1918 return was filed by the parent company on June 16, 1919. As that return showed for the several companies separately the data necessary for the computation of the tax of each, it was sufficient to put the statute of limitations in operation. *Continental Oil Co.*, 23 B. T. A. 311, and cases therein cited. The statutory period for assessment and collection, as extended by the waiver filed, expired June 16, 1925. Consequently the assessment of March 15, 1924, was timely, but under *Russell* v. *United States*, 278 U. S. 181, collection was barred when the deficiency notice of May 22, 1926, was sent, unless, as contended by respondent, the period was extended by reason of the filing of claim in abatement and bond. We have repeatedly held that the filing of an abatement claim or a bond does not extend the statutory period. *Wirt Franklin*, 8 B. T. A. 977; *Gulf States Steel Co.*, 12 B. T. A. 1244; *J. B. Dortch*, 19 B. T. A. 159. Respondent's contention is that collection is not barred, because section 279(a) of the Revenue Act of 1924 provides that upon the filing of an abatement "claim and bond the collection * * * shall be stayed pending the final disposition of the claim." That provision, however, relates only to assessments made under section 274(d) of the same act; that is, assessments made after the enactment of the statute, which was on June 2, 1924. Assessments made prior to that date fall within the rule of the *Russell* case,

*supra*, which in this case requires us to hold that collection was barred at the time the deficiency notice was mailed. Whether collection can be enforced by suit on the bond (see *United States* v. *Barth Co.*, 279 U. S. 370) need not be decided in this proceeding.

The 1919 consolidated return, setting forth separately the items of gross income, deductions, and invested capital for each of the petitioners, was filed on March 12, 1920. No waivers are shown to have been filed, and the statute of limitations therefore barred assessment and collection on March 12, 1925. As the assessments herein were not made until September 15, 1925, they were too late, and as the notices of deficiency were not sent until in May, 1926, they were likewise outside the statutory period.

Counsel for respondent concedes that if the consolidated return filed meets the requirements set out in *F. A. Hall Co.*, 3 B. T. A. 1172, the contention of petitioners herein would appear to be correct. We hold that the return filed meets the statutory requirements and that assessment and collection are barred.

## Affiliation Issue.

(a) *New England Power Company.*—Reference to the table set out in the findings of fact shows that the parent owned all the outstanding common stock of this petitioner and only a small amount of its preferred stock. Some of the preferred stock of petitioner was owned by the parent's stockholders, some by one of its subsidiaries, and some by the stockholders of another subsidiary. It is argued that if the preferred stock is to be taken into consideration in determining the extent of ownership or control, these holdings should be added to the parent's direct ownership. Granting for the moment that such addition is proper, the sum total of these holdings would range from a low of 50.09 per cent to a high of 67.04 per cent of the total outstanding stock. Obviously these percentages standing alone are not sufficient to sustain the claim for affiliation.

But petitioner's principal argument is that the preferred stock should be disregarded in affiliation cases and it cites a number of cases, some of which at first glance would seem to give support to the contention made. *Temtor Corn & Fruit Products Co.*, 299 Fed. 326 (affd. *sub nom. Schlafly* v. *United States*, 4 Fed. (2d) 195), is a case in which one company owned all the common stock of another, and the latter's preferred stock was held by some 3,000 stock holders. The preferred stock was entitled to vote only in the event that dividends were passed for a stated period. The courts disregarded the preferred stock and held the two corporations affiliated. In view of the restricted voting power of the preferred stock in that case, we think the decisions are of little weight in the

matter before us. In *Shillito Realty Co.*, 8 B. T. A. 665; affd., 39 Fed. (2d) 830, the parent owned all the common and 50 per cent of the preferred stock of the subsidiary. The preferred had full voting rights. The holders of 67.16 per cent of the parent's stock, who for the most part were officers, directors, or employees of the parent, or their relatives, owned 15.516 per cent of the preferred stock of the subsidiary. On these facts we allowed affiliation, saying that "Only an inconsiderable amount [of the preferred stock] was in the hands of persons who properly may be regarded as outside interests." It thus appears that the preferred stock with voting rights was taken into consideration in determining the extent of ownership or control. In *Atlantic City Electric Co.*, 15 B. T. A. 1084, the parent owned all the common stock of the subsidiaries. The subsidiaries had outstanding voting preferred stock which in the case of one was less than 23 per cent, and as to the other less than 30 per cent of the total outstanding stock. In holding the companies affiliated we said, "The holder of the preferred stock resembled a creditor of the corporation more than he resembled a common stock holder." We did not, however, disregard the preferred stock in reaching our conclusion. Had we done so, our holding would have been based purely on the 100 per cent common stock ownership by the parent, which, of course, in the absence of preferred stock would have been sufficient to allow affiliation. That we gave consideration to the preferred stock is shown in the opinion (p. 1089), where we listed as factors taken in consideration, "stock ownership, limitations surrounding the ownership of preferred stock, and the complete business dominance of petitioners by the parent company." In *J. A. Folger & Co. et al.*, 23 B. T. A. 210, interests outside a closely related group owned voting preferred stock amounting to not in excess of 30 per cent of the total common and preferred. We held that by reason of the domination exercised over the minority stock, there was "control" over it within the meaning of the statute. The latest decision on the question is *Commissioner* v. *Howes Bros. Hide Co.*, 284 U. S. 583, which reversed the Circuit Court of Appeals for the First Circuit (49 Fed. (2d) 878), which had reversed the Board in the same case, 17 B. T. A. 129. In that case five brothers owned all the common stock of one company which sought affiliation with another in which the brothers likewise owned all the common stock and all of the second preferred stock, but in which there was a large outside holding of first preferred stock. All of the preferred stock had voting rights. The holders of the first preferred stock almost without exception were absent from stockholders' meetings and such

stock of this class as was represented was voted by proxies given to two of the Howes brothers. In denying affiliation we held that:

It is true that at all times the five Howes brothers owned and controlled 50 per cent of the voting stock, but the evidence fails to show that they ever had a beneficial interest in any substantial amount of first preferred stock. It must be admitted that the Howes brothers dominated the company, directed its policies, and managed its business, but the test of the statute makes no mention of these factors in laying down the rule governing affiliation. The statute provides that substantially all the stock must be owned or controlled by the same interests, and " substantially all " can not be construed to mean a bare majority.

Counsel would have us hold that, since the common stock holders had it within their power to call the first preferred for redemption at any time, they effectually controlled this class of stock within the meaning of section 240(b) of the 1918 Act. It is undoubtedly true that the first preferred stockholders held their stock subject to call after proper notice, but it is just as true that this power was never exercised, and that the first preferred stockholders exercised their voting rights at every stockholders' meeting. The power or ability to control is not the control required by the statute, and it can not be said from the evidence before us that the first preferred stockholders were lacking in any of the elements of ownership of their stock."

The *Howes Bros.* case we think goes far towards dispelling any doubt that may have existed previous to the Supreme Court's decision as to whether preferred stock having voting rights should be included in the total stock outstanding for the purpose of determining whether there is ownership or control of " substantially all of the stock." In our opinion such stock must be included.

Applying this conclusion to the present situation, it is plain that the parent did not own or control sufficient stock of the New England Power Company—50.09 to 67.04 per cent—to constitute substantially all, and it must be held that the two were not affiliated.

(b) *Connecticut River Power Company.*—The parent company owned all the common stock and some of the preferred. Counting in both the common and preferred, as we held above must be done, the parent's ownership varied from 67.75 per cent to 83.77 per cent. Petitioner contends these percentages should be augmented by the holdings of the stockholders of the parent and the stockholders of the New England Power Company. In our opinion this may not be done. No control by the parent over such stock is shown. The fact that the parent dominated the business policies and operations of the subsidiaries is not sufficient to establish control over the stock held by others. Under the decision in *Handy & Harman* v. *Burnet*, 284 U. S. 136, the control required by the statute is legally enforceable control, and that exercised through economic domination is insufficient.

In the present case the question is thus narrowed to whether the percentages set out above, representing the parent company's direct ownership, constitute " substantially all " the stock of the Connecticut

River Power Company. In the light of the decided cases we are of the opinion that they do not, and that affiliation must be denied. *Handy & Harman* v. *Burnet, supra* (in which the owners of 93.71 per cent of the parent owned or controlled 81.27 per cent of the subsidiary); *United States* v. *Cleveland P. & E. R. Co.*, 42 Fed. (2d) 413 (77 to 84 per cent ownership); *Denunzio Fruit Co.*, 16 B. T. A. 1326; affd., 49 Fed. (2d) 41 (80⅓ per cent ownership and control of additional 3 per cent).

(c) *Bellows Falls Power Company.*—In this company the parent owned 85 per cent of the common and from 75 to 95 per cent of the preferred stock. The voting rights of the preferred were limited to matters relating to increasing bonded indebtedness and preferred stock. The parties appear to be agreed that in view of the limited voting rights of the preferred stock it should not be included in determining the parent's ownership or control. No such control as contemplated by the statute is shown to have existed over the 15 per cent owned by the so-called "Phipps interests." This leaves the affiliation claim resting on the parent's ownership of 85 per cent, which in our opinion is insufficient. *United States* v. *Cleveland P. & E. R. Co., supra; S. N. & C. Russell Mfg. Co.*, 16 B. T. A. 501.

We are accordingly of the opinion that none of the petitioners were affiliated, within the meaning of the statute, with the New England Company, and the respondent's denial of affiliation is sustained.

### Claimed Interest Deductions.

For the years 1919 and 1920 the New England Power Company and the Connecticut River Power Company entered on their books as capital items certain amounts which they now seek to deduct as interest, claiming that such amounts are interest on funds used for construction of new plant facilities.

Interest as such is properly deductible in the year of accrual or payment, as the case may be (sec. 234 (a) (2), Revenue Act of 1918), and it is not a proper capital item. *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590; *Spring Valley Water Co.*, 5 B. T. A. 660. See also *Arthur C. Fraser*, 6 B. T. A. 346; affd., 25 Fed. (2d) 653. But in this case it does not appear that petitioners ever became liable for or paid any interest. The only evidence on this point is contained in the testimony of the individual who is treasurer of the parent company, and who during the taxable years was either auditor or general auditor of the parent and all the subsidiaries. He testified that construction jobs for the operating companies were financed by the loan of funds by the parent to the Power Construction Company, which funds were used by the Construction Company to pay wages and purchase materials and supplies in connection with the construction work. The

construction company made charges to the work representing the interest, and such charges became a part of the cost of the work, which was billed by the construction company to the operating company for which the work was performed. It does not appear that the operating companies, petitioners here, ever borrowed any funds from the parent for construction purposes. The loans were made to the construction company and it put itself in position to pay the interest by increasing the cost of the work in an amount sufficient to cover the interest it was required to pay. We see no difference between the situation here and the ordinary case where a contractor borrows funds to prosecute a construction job and figures in the interest he will be required to pay in the sale price he fixes for the completed job. In such a case, while the purchaser reimburses the contractor for the interest, he does not pay interest as such.

## Guaranty of Dividends.

Under written contracts the parent company assumed the liability to pay semiannually an amount which, added to the available income of the Bellows Falls Power Company, would be sufficient to pay an annual dividend of $5 on the preferred stock of the latter. While the parent agreed to make the payment to a designated trust company, in practice a shortcut was taken and payment was made directly to the Bellows Falls Power Company, so that it could pay its dividends in full in one payment. The amounts so paid were included by respondent in income of the Falls Company, and his action in so doing is alleged to be erroneous.

Petitioner contends that this case is not within the rule of *Rensselear & S. R. Co.* v. *Irwin*, 249 Fed. 726; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716, and similar cases, because it was not a party to the guaranty agreements, and, further, there was no lease of property or any consideration whatever on the part of the Falls Company. In our opinion the sums received by the Falls Company from the parent do not fit within the definition of income as " gain derived from capital, from labor, or from both combined," *Eisner* v. *Macomber*, 252 U. S. 189. The payments received did not represent a return on any capital investment on its part, nor were they received for any labor or service rendered. The Falls Company was merely a conduit through which the payments passed to those entitled to them.

Respondent has long held that payments by a holding company in fulfillment to a guaranty of dividends of a subsidiary may not be deducted by the holding company in computing net income, but may be added to the cost of its stock in the subsidiary. See art. 582,

Reg. 45, 62, and 65; art. 282, Reg. 74. If this view of the respondent be correct, it would seem to follow necessarily that the payments when received by the subsidiary would not constitute income. Without passing on the validity of these regulations, we are of the opinion that the payments by the New England Company to the Bellows Falls Power Company were not income to the latter.

*Decision will be entered under Rule 50.*