WESTERN INDUSTRIES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42794.   Promulgated May 31, 1934.

*Joseph C. Meyerstein, Esq.*, and *W. W. Spalding, Esq.*, for the petitioner.

*Bruce A. Low, Esq.*, and *T. G. Histon, Esq.*, for the respondent.

811

OPINION.

SEAWELL: The theory of the respondent's determination is that the transaction between the petitioner and the Chemical Corporation was nothing more than a sale, and therefore not one falling within section 203 of the Revenue Act of 1926, the material portions

of which are set forth in the margin.[1] The petitioner, in contending that a reorganization, not a sale, took place, claims that the question turns upon whether the petitioner transferred substantially all of its properties to the Chemical Corporation. No issue was raised as to the fair market value of the notes and common stock received in the sale, or the basis used by the respondent in computing the taxable gain realized from the transaction. If the petitioner is to escape tax on the full amount of profit realized from the transaction, it must be because of a clear showing that it is within the exceptions set forth in section 203 of the statute. *Pinellas Ice & Cold Storage Co.*, 21 B.T.A. 425; affd., 57 Fed. (2d) 188; 287 U.S. 462; *Arctic Ice Machine Co.*, 23 B.T.A. 1223.

The petitioner transferred assets of a book value of $479,835.75 for cash, notes, and stock, of an aggregate value, as reported, of $1,123,537.26, and retained net assets of a book value of $194,575.09. Computing it on the basis of book value, the petitioner transferred about 71.2 percent of its assets to the Chemical Corporation and retained about 28.8 percent. If we use as a factor the value of property received for the assets transferred, including the value placed upon the common stock by the petitioner, as the court did in *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U.S. 599; affirming 22 B.T.A. 808, we find that about 85.2 percent of the petitioner's assets was transferred and about 14.8 percent was retained. Thus the petitioner did not divest itself of more than approximately 85.2 percent of its assets. This does not constitute substantially all of petitioner's properties within the meaning of

---

[1] Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

\* \* \* \* \* \* \*

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of \* \* \* substantially all the properties of another corporation) \* \* \*.

the statute. *Gulf Coast Irrigation Co.*, 24 B.T.A. 958; *Good Mfg. Co.* v. *Burnet*, 58 Fed. (2d) 685; *Bank of Italy* v. *Burnet*, 46 Fed. (2d) 629; certiorari denied, 283 U.S. 846; *New England Power Co.*, 25 B.T.A. 195; *United States* v. *Cleveland P. & E. R. Co.*, 42 Fed. (2d) 413; *Wadhams & Co.* v. *United States*, 67 Ct. Cls. 235.

It is not necessary to rest the decision on this point. A taxpayer claiming the benefits of the statute must show that the parties to the transaction had a plan of reorganization. *Arctic Ice Machine Co., supra; J. M. Harrison, Inc.*, 30 B.T.A. 455. The negotiations resulting in the transfer of the assets extended over a period of about six months and were conducted by Roger Bacqueraz, vice president and manager of the petitioner, and Henry I. Peffer, organizer of the Chemical Corporation, through an exchange of letters and telegrams and by verbal conversations. We have not been advised of any understanding reached during such negotiations respecting a plan of reorganization, and it appears that no formal agreement was entered into covering the transfer of petitioner's assets. No attempt was made to offer in evidence any resolution the petitioner may have adopted on the subject. Peffer testified that "It was essentially necessary to acquire the assets of the Western Industries in order to bring about the organization of the new corporation." This testimony of Peffer proves nothing more than that the Chemical Corporation had some plan for the acquisition of the assets of the petitioner. This constitutes all of the evidence on the question and is insufficient to show that the petitioner or any of the other parties to the transaction had a plan of reorganization.

The petitioner distributed most of the cash to the stockholders and continued to hold the stock received in the transfer. Instead of dissolving it continued as a going concern, apparently without any change in the ownership of its stock. Under similar facts we have held that the statute does not apply. *Minnesota Tea Co.*, 28 B.T.A. 591. The respondent did not err in computing the taxable gain realized in the transfer on the basis of a sale.

The petitioner returned the preference stock received in the sale at a value of $30 per share, with the statement that "The actual value of the preferred stock was probably less than $30.00 per share, but it does not appear that the net gain to be recognized would be affected thereby." The respondent found a value for the stock equal to the amount returned. The petitioner's present contention is that the stock should be valued at its book value of $4.05 per share.

We think the evidence supports rather than overcomes the presumption existing in favor of the respondent's determination of value. The agreement of the petitioner to refrain from selling its block of the stock until after the completion of the syndicate opera-

tions did not leave the securities without fair market value. *Minnesota Tea Co., supra; Tex-Penn Oil Co.*, 28 B.T.A. 917. Frederick O. Lage, of the firm of Lage & Co., one of the members of the syndicate which underwrote about 35,000 shares of the stock in April 1926 at $31 per unit, testified on behalf of the petitioner that he considered such purchase price a fair market value of the stock at that time. The record does not show the price at which the syndicate offered the stock to the public, but it was acquired for the purpose of placing it on the market at a price of $35 per unit, consisting of one share of preference stock, and one half share of common stock having no fair market value. The record does show, however, that all of the stock was sold by November 1, 1926, without loss to the syndicate, and the testimony of Lage is that the members of the syndicate considered the price at which the stock was being offered a fair price for the securities. After the completion of the syndicate operations the stock sold for as high as $32.50 per share.

The petitioner relies upon *Wallis Tractor Co.*, 3 B.T.A. 981, in support of its method of determining the fair market value of the stock. In that case there was proof of the fair market value of the assets behind the stock. That is lacking here. The respondent's finding of a fair market value for the stock of $30 per share has not been overcome and is sustained.

*Decision will be entered for the respondent.*