CONTINENTAL OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28427. Promulgated May 19, 1931.

*Arthur B. Hyman, Esq.*, for the petitioner.

*J. L. Backstrom, Esq.*, and *P. A. Sebastian, Esq.*, for the respondent.

314

318

322

#### OPINION.

VAN FOSSAN: The question of the validity of section 280 of the Revenue Act of 1926 has been disposed of by us in *Henry Cappelini et al.*, 14 B. T. A. 1269 (cited in numerous subsequent decisions). See also *Phillips v. Commissioner*, 42 Fed. (2d) 177.

It is obvious that if the appropriate statutes of limitations bar the respondent there is no necessity to discuss the questions raised by the petitioner in allegations of error Nos. 2 and 3. For this reason

we will consider first the allegation of the petitioner that such statutes bar the assessment and collection of the taxes proposed for assessment against it and alleged to constitute its liability as a transferee of the assets of the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, and the Northwestern Oil Refining Company for income and profits taxes ascertained to be due for the periods heretofore mentioned.

Section 280 of the Revenue Act of 1926 provides as follows:

(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

(2) The liability of a fiduciary under section 3467 of the Revised Statutes in respect of the payment of any such tax from the estate of the taxpayer. Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

\*        \*        \*        \*        \*        \*        \*

It is stipulated that no assessments other than those made pursuant to the original consolidated returns for the calendar years of 1919 and 1920 (which assessments were paid in full) were made for those years or any part thereof against the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, and the Northwestern Oil Refining Company, and that no suits or proceedings were begun against them or any of them for the assessment and/or collection of the deficiencies alleged by the respondent. Therefore, it is patent that subdivision (b) (2) of section 280 is not applicable. However, the petitioner maintains that a proper construction of subsection (b) (1) serves to bar the assessment of any liability against the petitioner as the alleged transferee of the corporations above named.

The petitioner contends that the period of limitation for assessment of its liability as a transferee is the 5-year period contemplated by the statute and not such period as extended by the waivers executed by the transferors and the Commissioner of Internal Revenue. We are not impressed with this view. The petitioner assumed the liabilities and infirmities, potential and actual, to which the transferors and the transfered assets were subject. Among these was the obligation to pay any additional income and excess-profits taxes that might be found due from the transferors and be seasonably and properly assessed or in respect of which a deficiency notice might be duly mailed by the respondent pursuant to the statute. If the waivers are in proper form and valid, subdivision (1) of section 280 does not bar assessment. See *Charles D. Jaffee et al.*, 17 B. T. A. 675.

The respondent asserts that the statute of limitations does not apply to the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company and the Northwestern Oil Refining Company for the period from January 1 to February 28, 1919, inclusive, because the Mutual Oil Company of Maine included their income in its consolidated return for the full calendar year of 1919, and contends likewise as to the Mutual Oil Company of Maine and its subsidiaries for the period from January 1 to March 15, 1920, because the Elk Basin Consolidated Petroleum Company included their income in its consolidated income-tax return for the entire year of 1920. In *F. A. Hall, Inc.*, 3 B. T. A. 1172; *National Tank & Export Co.*, 3 B. T. A. 1217; affd., 35 Fed. (2d) 381; *Stetson and Ellison*, 11 B. T. A. 397; affd., 43 Fed. (2d) 553, and numerous other cases we have held that such a consolidated return filed in good faith and making a substantial revelation of the gross income and deductions of the constituent members of the group is the return of the constituent corporations of the consolidated group, as contemplated by the statute of limitations, although later they, or some of them, may be found not to be properly affiliated. The consolidated returns in the instant case revealed the gross and net income of each of the constituent members. The reasoning underlying the above decisions applies equally well to corporations which may be realigned in their affiliated relationship with other members of the group during the taxable year, as in the present case. Therefore, the filing of the consolidated returns by the Mutual Oil Company of Maine and the Elk Basin Consolidated Petroleum Company for the years 1919 and 1920, respectively, was a substantial compliance with the law and started the running of the limitation period against the subsidiary corporations named in such returns.

It becomes necessary to examine the waivers executed by the several corporations in order to ascertain which, if any, may avoid the

proposed deficiencies by reason of the invalidity of such waivers and the consequent operation of the statute of limitations.

The petitioner attacks specifically the waivers executed on October 27, 1926, and the respondent concedes that if such waivers are found to be invalid, the petitioner can not be held as transferee under section 280. But we must consider all waivers filed in this case, since they all have a vital bearing on our decision. The four corporations executing such waivers were dissolved in 1922, or prior thereto. The petitioner contends that the waivers dated October 27, 1926, were executed by persons without authority to perform such an act. That defect, if such it is, exists likewise in all other waivers.

We are afforded few facts relating to the dissolution of the Mutual Oil Company of Maine, the Mutual Refining and Producing Company, the Northwestern Oil Refining Company, and the Mutual Oil Company of Arizona, aside from the mere assertion that those corporations were dissolved. The stipulation of facts states only that A. Herning and H. P. Ferree who purported to sign such waivers as secretary of the said corporations were, at the time they signed such waivers, the persons authorized by law to execute them on behalf of the said corporations, " provided that any officer, director or stockholder of said corporations was authorized by law to execute said waivers on behalf of said corporations," and specifies that the petitioner does not concede the validity, competency, relevancy, or materiality of such waivers. On the agreed facts petitioner has made a prima facie showing that the statute of limitations bars respondent from action unless the consents were valid. Under the rulings of the Board in *Farmers Feed Co.*, 10 B. T. A. 1069; *Bonwit Teller & Co.*, 10 B. T. A. 1300; *Carnation Milk Products Co.*, 15 B. T. A. 556; *Jonathan Godfrey*, 18 B. T. A. 775, the burden of proving the validity of the consents or waivers rests on the respondent. We perceive no reason why we should not assume that the corporations had complied with the provisions of the appropriate statutes governing dissolution nor have we reason to assume that a receiver or other officer was appointed by any proper tribunal to take charge of the affairs of the dissolved corporations, or that any authority to execute the waivers was granted to Herning and Ferree.

On March 15, 1920, the Mutual Oil Company of Maine assigned, transferred and released all its right, title and interest in and to all its property to the Elk Basin Consolidated Petroleum Company in exchange for 600,000 shares of stock of the latter company. The Mutual Oil Company of Maine dissolved on January 12, 1921. Section 81 of chapter 51 of the Revised Statutes of Maine, 1916, is as follows:

Corporations, whose charters expire or are otherwise terminated, have a corporate existence for three years thereafter; to prosecute and defend suits; to settle and close their concerns; to dispose of their property; and to divide their capitals.

The Mutual Oil Company of Maine attempted to execute six waivers, all signed by H. P. Ferree, secretary. The earliest of these waivers bears date of March 14, 1925, more than three years after the dissolution of the corporation. Under the statute and supported by decisions in pertinent cases in the State courts of Maine (*Shore Line Road* v. *Maine Central Railroad*, 92 Maine 476; *Carter* v. *Stewart Glove Co.*, 115 Maine 289), it has been established that in the State of Maine corporate existence ceases absolutely for all purposes three years after dissolution. Therefore, the Mutual Oil Company of Maine passed out of existence on January 12, 1924. Hence, the waivers purporting to have been executed by that corporation thereafter are void and the liability of that corporation for income and excess-profits taxes can not be assessed or collected from the petitioner. *Barron-Anderson Co.*, 17 B. T. A. 686; *The Newport Co.*, 22 B. T. A. 833.

The Mutual Refining and Producing Company was dissolved on January 12, 1921, and the Northwestern Oil Refining Company on August 7, 1922. Both are Wyoming corporations. Chapter 349 of the Wyoming Compiled Statutes (1920) relates to the dissolution of corporations and prescribes the procedure by which dissolution may be effected and the affairs of the dissolved corporations may be settled. Section 5441 is as follows:

*Duties and powers of trustees on dissolution.* Upon dissolution by expiration of its charter or otherwise, of any corporation now existing, or which hereafter may be formed, unless some other person or persons be appointed by the legislature or some court of competent jurisdiction, the board of trustees or directors of such corporation, or the managers of the corporate affairs, by whatever name known, acting last before the time of their dissolution, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same, to sue for and collect the debts and moneys due the corporation, or to compound and settle the same as they may deem best; to have, hold, reserve, sell and dispose of property, real and personal, of every such corporation dissolved, to adjust and pay all the debts of the corporation dissolved, to divide the residue of the moneys and property belonging to the corporation dissolved, after payment of debts and the necessary and reasonable expenses, among the stockholders holding stock in such corporation, in proportion to the amount of stock of each stockholder paid up; all such trustees shall be jointly and severally liable to the creditors and stockholders of such corporation dissolved, to the extent of the property and effects which shall come into their hands and possession, or into the hands or possession of any of them.

The waivers executed by Herning were not signed by him in his capacity as a trustee of the creditors and stockholders of the dissolved corporations, but merely as the secretary of a defunct cor-

poration. There is no proof that any one had authority to act for the corporation in dissolution nor is this defect met by the stipulation that Herning and Ferree were the persons authorized by law to execute said waivers provided that any officer, director or stockholder of said corporation was authorized by law to execute said waivers on behalf of said corporation. Under circumstances quite similar to those existing in the case at bar, we held in *White Eagle Oil & Refining Co.*, 19 B. T. A. 185, that a waiver signed by the vice president of that corporation was void in the absence of proof that its execution was authorized by the trustees in dissolution or that such officer had general or special authority to act for such trustees. In the present case there is no proof of the existence of trustees in dissolution or any acts on their part authorizing the execution of the waivers. Hence, we find that the assessment of any deficiencies against the two corporations (the Mutual Refining and Producing Company and Northwestern Oil Refining Company) was barred by the statute of limitations on January 1, 1927. See *Jonathan Godfrey*, 18 B. T. A. 775; *Southwestern Investment Co.*, 19 B. T. A. 30.

The petitioner asserts that the waivers executed by the Mutual Oil Company of Arizona on October 27, 1926 (Exhibits Nos. 2 and 6), were invalid by virtue of the dissolution of that company on January 23, 1922, and the consequent lack of authority of its former secretary, A. Herning, to execute an effective and binding waiver. All other waivers executed on behalf of the Mutual Oil Company of Arizona also were signed by A. Herning, secretary. The Mutual Oil Company of Arizona transferred its assets to the petitioner on December 31, 1921.

The laws of Arizona governing the dissolution of corporations are quite general. The pertinent portion of section 2107 of the Revised Statutes of Arizona (1913) relating to that subject is as follows:

* * * or whenever at any general or special meeting of the stockholders of any such corporation the holders of the majority of its outstanding stock represented or voting at any such meeting shall have directed the disposal of all corporate assets, or that the corporation be dissolved or that it cease to use or exercise its corporate franchises, or whenever the directors or officers or managing board of any such corporation being thereto authorized or directed by a majority of the outstanding stock thereof, representing or voting at any general or special meeting thereof, shall have disposed of all the corporate assets, or dissolved or attempted to dissolve or secure the dissolution of such corporation or shall have done or attempted to do any of the aforesaid, or when any such corporation shall have disposed of all its property and assets, then and in or on each, every or any one of the foregoing causes, situations, provisions or conditions, either the attorney general of the state, or any resident thereof, or any such corporation, or any stockholder or officer of any such corporation, may bring, prosecute and maintain (either in the name of the attorney general, or in his own name) an action in any court of record of this

state, to have and procure a judicial dissolution and disincorporation of all rights, privileges, and franchises; and whenever it is made to appear to any such court by petition or complaint of any of the aforesaid parties, that any one of the above named causes, provisions, situations or conditions exists in respect to such corporation, such court shall forthwith order or cite such corporation to appear before it (service of such order may be made upon the corporation either personally or upon the corporation commission) and if, upon hearing or trial, it be made to appear that any one of said causes, conditions, situations or provisions exists, such court shall thereupon dissolve and disincorporate such corporation and forfeit and annul each and every of its rights and privileges, and franchises.

Section 2108 of the said statutes is as follows:

Corporations whose charters expire by their own limitations or by the voluntary act of the stockholders may, nevertheless, continue to act for the purpose of closing up the business of such corporation, but for no other purpose unless renewed as in their charters provided.

In *Lemar's Shoe Co.* v. *Lemars Shoe Mfg. Co.*, 89 Ill. App. 245, it was held that:

Where a corporation ceases to do business, all implied powers in its officers to bind it by incurring new obligations are at an end. The president may without special authority from the board of directors, perform all acts of an ordinary nature, which by usage or necessity are incident to his office, and bind the corporation by contracts made in the usual course of its business; but when the corporation retires from business this authority ceases to exist.

The general proposition may be laid down that in the absence of statute a legislature may bind a trustee in conformity with its own or with equitable rules, and that in the absence of statute and legislative appointment a court of equity, which never allows a trust to fail for want of a trustee, will itself make the appointment. 14 Corpus Juris, par. 3838-3.

As we have pointed out above, the burden is on the respondent to prove that the agreement which he alleges and upon which he relies as extending the period for assessment was validly executed. Therefore, the question being raised, the respondent must show that Herning was duly and properly authorized to execute the waivers on behalf of a dissolved corporation. In our opinion no such authority is shown to have existed in this case. The letter of the respondent dated March 15, 1927, recites the fact of the dissolution of the Mutual Oil Company of Arizona on January 23, 1922. Necessarily the respondent must have had knowledge of that fact some time prior to the issuance of his letter. The record discloses no activities of the corporation of any kind subsequent to its dissolution on January 23, 1922. If an assumption were to be made it would be that even under the permission of section 2108 of the Statutes of Arizona the corporation engaged in no activities since, under the procedure established by the statutes of that State, the final decree of January 23, 1922, effected a complete dissolution of the corporation.

The facts in the case at bar are to be distinguished from those in *Charles D. Jaffee*, 17 B. T. A. 675, in which we held that the consents executed by C. D. Jaffee as treasurer of Schwartz and Jaffee, Inc., were sufficient to extend the statute of limitations for the assessment and collection of taxes against that corporation. In that case the laws of the State of New York provide specifically that the board of directors of the dissolved corporation shall proceed to adjust and wind up its business and affairs. The evidence there showed that the corporation was in the process of being liquidated by such directors, at least up until the time the waivers were signed, and that the officer signing such waivers was an officer of the corporation prior to dissolution and became one of the directors in liquidation. No such facts appear in this case and under the situation as above set forth we are of the opinion that the waivers signed by A. Herning in behalf of the Mutual Oil Company of Arizona are not valid and do not serve to extend the statutory period. Therefore, the statute of limitations relating to the assessment of additional tax against the Mutual Oil Company of Arizona became operative on March 16, 1926.

Upon further examining the waivers executed on behalf of the Mutual Oil Company of Arizona and the Mutual Refining and Producing Company, we observe that for the period from March 1 to December 31, 1919, no waiver was filed until March 2, 1926. The waiver dated January 27, 1925, relating to the entire year 1919 extended the period only to December 31, 1925. Therefore, during the period from January 1 to March 2, 1926, there was no instrument in existence which served or purported to extend the statutory period of limitation as to the year 1919. The Revenue Act of 1926 was approved February 26, 1926. Therefore, the liability of the Mutual Oil Company of Arizona and the Mutual Refining and Producing Company for the payment of any tax that might be assessed against them for the period from March 1, 1919, to December 31, 1919, was extinguished and was not revived by the execution of the waiver of March 2, 1926. The liability of the petitioner as transferee was also extinguished with the liability of the alleged transferor taxpayers. *Caroline J. Shaw*, 21 B. T. A. 400.

Although the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, the Northwestern Oil Refining Company and the Mutual Oil Company of Maine purported to have executed waivers for the period from January 1 to March 15, 1920, and the respondent concedes that the waivers executed on October 27, 1926, covering that period control his right to assess under section 280, an entirely different situation exists as to the applicability of the statute of limitations to that period. On or about March 15, 1921, the Elk Basin Consolidated Petroleum Com-

pany filed a consolidated return of income for the calendar year 1920 for itself as parent and the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, and the Northwestern Oil Refining Company as subsidiaries. The respondent determined that a consolidation existed from January 1, 1920, to March 15, 1920, with the Mutual Oil Company of Maine as parent and the Mutual Oil Company of Arizona, Mutual Refining and Producing Company and the Northwestern Oil Refining Company as subsidiaries and that a new consolidation had been effected for the period from March 15, 1920, to December 31, 1920, with the Elk Basin Consolidated Petroleum Company as parent and the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, Mutual Refining and Producing Company, and the Northwestern Oil Refining Company as subsidiaries.

As to the Mutual Oil Company of Maine and its subsidiaries, the statute of limitations, applicable to the period from January 1, 1920, to March 15, 1920, expired on March 15, 1926, after the passage of the Revenue Act of 1926. Under the provisions of section 280, and consonant with previous decisions of this Board, the statute was not operative in the case of a transferee of those corporations until March 16, 1927. (*Louis Costanzo*, 16 B. T. A. 1294, and *Caroline J. Shaw, supra.*)

On March 15, 1927, the respondent mailed a notice of transferee liability to the petitioner, the Continental Oil Company (formerly the Elk Basin Consolidated Petroleum Company) as set forth in the findings of fact. In that letter the respondent proposed to assess the petitioner " as a transferee of the assets of the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, and the Northwestern Oil Refining Company for income and profits taxes due from them for the periods March 1, 1919 to December 31, 1919 and January 1, 1920 to March 15, 1920." He inclosed a statement which obviously was to form the basis and explanation of his action. Otherwise it would have been impossible for the petitioner to " acquiesce in a part of the determination " and execute a waiver " with respect to the items " to which he agreed as set forth in the last paragraph of the letter. The statement was captioned: " STATEMENT OF RETURNS EXAMINED AND RESULTING TAX LIABILITY." It listed as the returns examined those of the Mutual Oil Company of Maine, the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company and the Northwestern Oil Refining Company for the year 1919 and stated that " for the year 1920 all of the above companies were included in the calendar year return filed by the Elk Basin Consolidated Petroleum Company." Under the heading " Tax Liability " the respondent asserted as follows:

| Transferor | Year | Deficiency |
|---|---|---|
| Mutual Oil Company of Maine | 1919 | $20,648.17 |
| Mutual Oil Company of Maine | 1920 | 56,113.14 |
| Total | | 76,761.31 |

and under the heading "Tax liability under section 280 of the Revenue Act of 1926" he asserted as follows:

| Transferee | Year | Deficiency |
|---|---|---|
| Continental Oil Company | 1919 | $20,648.17 |
| Continental Oil Company | 1920 | 56,113.14 |
| Total | | 76,761.31 |

A similar situation exists as to the period from January 1, 1919, to February 28, 1919, covered by the second notice of transferee liability, with the exception that the respondent asserted that the Mutual Oil Company of Arizona was the transferor. Inasmuch as the Mutual Oil Company of Maine was determined by the respondent to be the parent company from March 1, 1919, to March 15, 1920, and the Mutual Oil Company of Arizona the parent company from January 1, 1919, to February 28, 1919, he has designated such parent companies to be the transferors under section 280. Section 240 (a) of the Revenue Act of 1918 provides that:

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportion as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each.

In proceeding under the above provision the Commissioner shall assess on the basis of net income assignable to each unless there be an agreement among the affiliated corporations that the assessment be made on some other basis. Here the respondent has determined the liability of the transferee as though there were an agreement that the entire tax should be assessed against the parent corporation. The respondent, apparently relying on such an agreement, must prove its existence. Cf. *L. A. Thompson Scenic Railway Co. of New Jersey*, 21 B. T. A. 718; *Bermont Oil Co. et al.*, 22 B. T. A. 182. No evidence was presented to establish this fact. From the stipulated facts it appears that the Mutual Oil Company of Maine suffered an actual loss of $8,255.02 for the period from January 1, 1920, to March 15, 1920. Hence there was no tax liability against the Mutual Oil Company of Maine for which, as transferee, the petitioner could be liable.

The provisions of section 280 constitute an extraordinary method of collecting the taxes of the person who is primarily liable therefor, and consequently they must be construed strictly against the respondent. When he attempts to make an alleged transferee liable for the taxes of another, his deficiency letter must show clearly and unmistakably the transferor whose taxes the transferee will ultimately pay. The respondent's deficiency letter of March 15, 1927, relating to the period from January 1, 1920, to March 15, 1920, failed to do this.

No assessments for the period January 1, 1920, to March 15, 1920, were made by the respondent other than those he made upon the filing of the original return on March 15, 1921. By his letter of March 15, 1927, he sought to charge the Mutual Oil Company of Maine with $56,113.14 in taxes and proposed to assess that amount against the petitioner as transferee of the Mutual Oil Company of Maine. As we have indicated heretofore, such a procedure is unwarranted and the petitioner is under no liability at law or in equity as the transferee of the assets of the Mutual Oil Company of Maine by reason of a deficiency in tax due from it for the period from January 1, 1920, to March 15, 1920. We do not discuss the question whether or not the transfer of the Mutual Oil Company of Maine to the petitioner was for a valuable consideration since such a question becomes unnecessary to consider under our decision here made.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

---

BLACK, dissenting: I dissent from the views of the majority opinion wherein it is held that the statute of limitations bars the assessment and collection of the taxes due by the Mutual Refining and Producing Company and the Northwestern Oil Refining Company.

Both of these corporations were Wyoming corporations. Mutual Refining and Producing Company was dissolved January 12, 1921, and Northwestern Refining and Producing Company was dissolved April 7, 1922.

Section 5441, Wyoming Compiled Statutes, prescribes how the affairs of a dissolved Wyoming corporation shall be wound up, and has been fully cited in the majority opinion. Under this statute, it is specifically provided that, " Unless the legislature or some court of competent jurisdiction shall appoint some other person or persons to wind up the affairs of a dissolved corporation, the Board of Trustees or Directors of the corporation or the *managers of the corporate affairs, by whatever name known, acting last before the time of their dissolution* shall be the trustees of the creditors and stock-

holders of the corporation dissolved and shall have power to settle the affairs of the same, etc." (Italics supplied.)

The waivers of the two Wyoming corporations in question were signed by the respective corporations by A. Herning, as secretary, under the seals of the respective corporations. It has been stipulated by the parties that "A. Herning," by whom the above mentioned waivers were signed as secretary of said corporations, " was at the time he signed said waivers the person authorized by law to execute said waivers on behalf of the said corporation, provided that any officer, director or stockholder of said corporation was authorized by law to execute said waivers on behalf of said corporations."

It seems to me that the above cited stipulation is conclusive as to the validity of the waivers.

The statute of Wyoming clearly authorizing the managers of the corporate affairs, by whatever name known, acting last before the dissolution, to wind up the affairs of the corporation, and it having been stipulated that if any officer of the corporation had such authority, Herning, secretary, was the one, it seems to me there is no room for doubt as to his authority to sign the waivers, *Charles D. Jaffee*, 18 B. T. A. 372; affd., 45 Fed. (2d) 679. The court in *Charles D. Jaffee, supra*, in affirming the decision of this Board and upholding the waivers signed by Charles D. Jaffee, as treasurer of the dissolved corporation, but where evidence was lacking of any specific authority from the board of directors of the dissolved corporation to Charles D. Jaffee, to sign said waivers, said:

* * * After Jaffee signed these waivers the liquidating agents affixed the corporate seal to them. They acquiesced in what he had done without protest or objection. The corporation got whatever benefit might result from a more careful audit by the bureau and the corporation, together with its board of directors, received whatever advantage was thereby to be gained. When the first waiver was signed the government gave up the right it then had to assess the 1919 taxes within the statutory period and when the last waivers were signed it gave up the right it then had to assess the 1919 taxes within the statutory period and when the last waivers were signed it gave up the right it then had to assess the 1920 taxes before the limitation of the statute had run. The board of directors could not, as it did, turn over its tax matters to agents authorized to handle them and by shutting its eyes avoid the consequences of what the agent did, learned or acquiesced in within the scope of its authority.

Beyond question an agent duly authorized to handle federal tax matters was authorized to execute waivers in furtherance of such business (compare *Liberty Baking Co.* v. *Heiner*, 37 Fed. (2d) 703) and notice to it that Charles D. Jaffee had executed the waivers was shown when it appeared that after he signed them the waivers were sent to the tax agents who had the corporate seal and attached it to them. Under such circumstances, of course, notice to the agents was notice to the principal. *Jefferson County National Bank* v. *Dewey et al*, 197 N. Y. L. 14; *Armstrong* v. *Ashley*, 204 U. S. 272; *Smith et al* v. *Ayer et al.*, 101 U. S. 320; and the signing of these waivers by Jaffee was not

only thus acquiesced in (see *U. S.* v. *Kemp*, 12 Fed. (2d) 7) by the board of directors through its agent but the agents actually participated in the execution of which his signing was a part. The waivers are as valid as though executed by the board of directors.

In view of the above cited authority, I think the holding of the majority opinion in the instant case, to the effect that the waivers signed by A. Herning, secretary of the two Wyoming corporations, are invalid, is wrong. In my judgment the waivers signed for and on behalf of the two Wyoming corporations were valid and the statute of limitations has not tolled as to these two corporations.

SMITH, ARUNDELL, and MURDOCK agree with this dissent.