*1270 OPINION.
Love :
The only question in these proceedings to be decided at this time is that involving the statute of limitations. The notices which form the bases for the petitions filed herein propose to assess certain liabilities against petitioners as transferees under the provisions of section 280 of the Revenue Act of 1926. Subdivision (b) of this • section provides in part as follows:
The period of limitation for assessment of any such liability of a transferee or fiduciary shall bo as follows:
(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer * * *.
The period of limitation for assessment against each taxpayer involved in these proceedings is within five years after the return was filed (sec. 250 (d), 1918 and 1921 Acts; sec. 277 (a) (2), 1924 Act; sec. 277 (a) (3), 1926 Act) unless both the Commissioner and the taxpayer _ should consent in writing to a later assessment (sec. 250 (d), 1921 Act; sec. 278 (c) 1924 and 1926 Acts), in which event the tax could be assessed at any time prior to the expiration of the period agreed upon, unless, further, the Commissioner should post a notice of deficiency by registered mail either within the five-year period or the extended period from which an appeal is filed with the Board, in which event “ The period within which an assessment is required to be made * * * shall be extended * * * by the number of days between the date of the mailing of such notice and the date of the final decision by the Board.” Sec. 277 (b), 1924 Act. See also sections 274 (a) and 277 (b) of the Revenue Act of 1926. If, how-evci’, the period of limitation for assessment against the taxpayer expired before the passage of the Revenue Act of 1926, then section 280 (b) (1), supra, is not applicable. Caroline J. Shaw, Executrix, 21 B. T. A. 400; and Barron-Anderson Co., 17 B. T. A. 686, cited therein.
The petitioners contend that, with but three exceptions mentioned below, all of the “ consents in writing ” hereinafter referred to as “ waivei’S ” were filed with the respondent at his request after the particular corporation taxpayer for which they were filed had been dissolved, which fact was known to the respondent, and after the time provided for by the laws of the corporation’s domicile for winding up its affairs had expired; that waivers filed under such circumstances could have no legal effect whatever; that the notices had been mailed to petitioners more than six years after the return for each of the said taxpayers had been filed; and that the period for making any assessment against either the taxpayer or the alleged transferee under the above cited statutes had, therefore, expired at the time the said notices were mailed.
*1271 The three exceptions referred to in the preceding paragraph pertain to (1) The Dunn Iron Mining Company, (2) The Harvest Farms Company, and (3) The Newport Turpentine & Eosin Company, Inc. (Alabama). Petitioners concede that since The Dunn Iron Mining Company was not dissolved, the waivers given on behalf of that corporation were valid, and that, therefore, at the time the said deficiency notices were mailed the period for making any assessment against that corporation had not expired. The situation is the same with respect to The Harvest Farms Company although petitioners do not expressly concede it in their briefs. The exception as to The Newport Turpentine & Eosin Company, Inc., is found in paragraph 51 of our findings, wherein we find that the first of four waivers was filed after that corporation had been legally dissolved but before the five-year period for winding up its affairs under the laws of Alabama had expired. This exception, as will appear later, becomes immaterial.
The respondent contends that the notices, which form the bases for the petitions filed herein were mailed within the period of limitations provided by the above cited statutes, and in support thereof relies upon the following thirteen points:
(1) That statutes of limitations should be strictly construed, and all doubts, if any, should be resolved in favor of the Government;
(2) That the effect of the various successorships under the several contracts and agreements should be determined according to the rules of Federal equity jurisprudence, and that under such rules there resulted from the transactions aforesaid, with respect to the powers, duties, liabilities, etc., of petitioners, and their officers and agents, “ a merger or suooessorship in interest, rather than the status of an assignee of the rights, privileges, and interests of the former companies ”;
(3) That by reason of the said mergers and/or successorships, petitioners, although proceeded against as transferees, are, nevertheless, “ taxpayers ” as that term is defined in section 1 of the Eevenue Acts of 1918 and 1921, and, therefore, all waivers signed by either or both petitioners as successors in interest are valid;
(4) That no special form of waiver is required under the statute and that a waiver signed by either or both petitioners as “ Successor in Interest,” but executed in the name of the dissolved corporation would be sufficient;
(5) That the dissolution proceedings of the several corporations in the several States were but mere formalities in the perfection of the said mergers and/or successorships in interest, and that since the predecessor companies had been divested of all their properties they were no longer in any position to respond and petitioners were *1272 the only entities from which any unpaid taxes could have been collected;
(6) That statutes of the state of origin and the general rules applicable to dissolved corporations in the respective states of origin can not be held to restrict the rights given to creditors under Wisconsin statutes as to foreign corporations which had been dissolved while doing business in Wisconsin (not applicable to Docket No. 28149);
(7) That foreign corporations doing business in Wisconsin which were legally dissolved in the state of their incorporation, nevertheless, continued as corporations de facto in Wisconsin and that their business was thereafter operated in unbroken sequence by their successors in interest (Not applicable to Docket No. 28149);
(8) That even if point (7) is not true, petitioners, through their officers and agents, having been responsible for and party privy to the execution of the waivers executed for each of their predecessor companies in their respective corporate names, and under their
■respective corporate seals, for the purpose of obtaining further consideration of their protests and claims by the respondent, for their benefit, may not now be heard to say that the waivers given as aforesaid were executed without authority;
(9) That petitioners are bound by the waivers given under the law of implied agency and implied warranty of the authority of those who executed the respective waivers at petitioners’ instance and under their direction, “ in the absence of a showing that it (;petitioners) made a full and comflete disclosure — of all the material facts and circumstances ” which might affect their validity;
(10) That the taxes imposed upon all of the corporations herein involved except The Dunn Iron Mining Company may be assessed and collected at any time under the provisions of section 278 (b) of the Eevenue Act of 1926;
(11) That the returns mentioned in our findings 42 to 45, inclusive, were not “ the returns ” required by law, and were not, therefore, sufficient to start the running of the statute of limitations;
(12) That a transferee of a transferee is liable for taxes imposed upon the transferor which had accrued when the first transfer wns made; and
(13) That an assignee of the rights of a transferee, which receives a conveyance of property as the nominee of the transferee under the contract of purchase, is not itself a transferee.
In regard to the first point relied upon the respondent, it seems only necessary to quote the language of the Supreme Court in the case of United States v. Updike, 281 U. S. 489, as follows:
*1273 * * * In any event, we think this is the fair interpretation of the clause, and the one which must be accepted, especially in view of the rule which requires taxing acts, including provisions of limitation embodied therein, to be construed liberally in favor of the taxpayer. Bowers v. N. Y. & Albany Co., 273 U. S. 346, 349, 47 S. Ct. 389, 71 L. Ed. 676.
The above-mentioned points (2) to (9) inclusive, are substantially the same as were argued by the respondent in a prior proceeding entitled The Newport Company, 22 B. T. A. 833, which dealt with two of the corporations herein involved, except for an earlier year. The same counsel appear in both proceedings. In the earlier proceeding the respondent proposed to assess against The Newport Company as transferee a liability for a deficiency in income and excess-profits taxes of The Newport Chemical Works, Inc., for the year 1917. The petitioner resisted on the ground that the statute of limitations for making any such assessment had expired and advanced the same arguments in support thereof as have been made in the instant proceedings.
A brief summary of the salient facts in the earlier proceeding will show the similarity of the questions involved there and here. All the general facts found in the instant proceedings pertaining to The Newport Chemical Works, Inc., and The Newport Company relating to such matters as 1919 reorganization transactions, dissolutions, notices to respondent of dissolutions, etc., are the same in both cases. On April 1, 1918, The Newport Chemical Works, Inc., originally filed separate income and excess-profits-tax returns for the year 1917. The respondent later determined that it was affiliated with The Newport Mining Company for that year for excess-profits-tax purposes only. Six waivers were filed on behalf of The Newport Chemical Works, Inc., for 1917, the last five of which were filed after that corporation had been legally dissolved for more than three years. The first waiver was executed on December 15, 1920, was signed “ Newport Chemical Works, Incorporated by Edw. G. Wilmer, Vice-President,” and expired, in accordance with respondent’s Mimeograph 3085, on April 1, 1924. The second waiver was executed on December 11, 1923, on behalf of “ The Newport Mining Company and affiliated companies ” and was signed “ The Newport Mining Company Taxpayer By H. J. Schlesinger Vice-President.” The next three waivers were executed on or about February 26,1924, December 23, 1924, and January 12, 1926, respectively, and were all signed “ Newport Chemical Works, Inc., Taxpayer by II. J. Schlesinger Vice-President.” The sixth waiver was executed on November 6, 1926, on behalf of the “ Newport Chemical Works, a taxpayer of Milwaukee, Wisconsin,” and was signed “ The Newport Company *1274 Taxpayer By A. A. Schlesinger President As successors in Interest to the Newport Chemical Works.” The transferee liability notice was mailed to The Newport Company on March 14, 1927.
We decided for the petitioner in the earlier proceeding and held, among other things, that the last five waivers were invalid, as far as The Newport Chemical Works, Inc., was concerned, because executed more than three years after that corporation had been legally dissolved and had ceased to exist for all purposes, and that the statute of limitations for assessing any tax against either that corporation or The Newport Company expired on April 1,1924. We know of no valid reason why our decision in the instant proceedings, as- far as respondent’s points (2) to (9"), inclusive, are concerned, should not be the same as it was in the earlier one, and we, therefore, pass on to the consideration of the remaining four points. See also Barron-Anderson Co., supra; petition for review dismissed September 16, 1930; Farmers & Planters Tobacco Warehouse Co., 22 B. T. A. 1331; and Continental Oil Co., 23 B. T. A. 311, 327.
The tenth point relied upon by the respondent is that when he disallowed the deduction for amortization of war facilities claimed by certain of the corporations on their original returns, that part of the deficiencies which result from such disallowance is “ attributable to a change in a deduction tentatively allowed under * * * paragraph (8) of subdivision (a) of section 234, of the Revenue Act of 1918 ” and, under section 278 (b) of the Revenue Act of 1926 just quoted, “ may be assessed * * * at any time.” He argues that the acceptance of the returns and the original assessments thereon and the acceptance of the payment of the tax as shown by the returns was a “ tentative ” allowance of the deductions there claimed within the meaning of the words “ tentatively allowed ” as used in section 278 (b), supra. We have decided this contention adversely to the respondent in the cases of W. G. Duncan Coal Co., 13 B. T. A. 672; and Ohio Falls Dye & Finishing Works, 16 B. T. A. 1038; affirmed by the Sixth Circuit at 50 Fed. (2d) 660.
The eleventh point relied upon by the respondent is that the returns mentioned in our findings at paragraphs 42 to 45, inclusive, were not such returns as would start the statute of limitations running as to any of the transferors involved herein for the 6-month period ending June 30, 1919. As shown in our preliminary statement, the only transferors against whom the respondent has determined deficiencies for this period are The Northwestern Iron Company, The Dunn Iron Mining Company, and The Newport Chemical Works, Inc. Since petitioners concede that the statute has not run (on account of valid waivers being given) as to The Dunn Iron *1275 Mining Company, we need only consider this point as it affects the other two transferors. The facts pertaining to The Northwestern Iron Company on this point are set out in full in our findings at paragraphs 44 to 47, inclusive, and those pertaining to The Newport Chemical Works, Inc., at paragraphs 42, 43, 46 and 47.
It is the respondent’s contention that since neither of these trans-ferors was affiliated with either The Steel and Tube Company of America or The Newport Company for the first six months of 1919, the inclusion by them of their income and invested capital in the consolidated returns of the latter was erroneous, and that the statute of limitations for making any assessment against such trans-ferors could not commence to run until the return mentioned in paragraph 47 was filed. This contention has been presented before this Board and the Circuit Courts many times and it is now well established that where several corporations in good faith file a consolidated return in which the separate gross income and deductions of each corporation are reported, the filing of such return is such a substantial compliance with the statute relating to the filing of reurns as will start the statute of limitatioíls running with respect to each corporation included therein, although it later be determined that one or more of such corporations were not affiliated with the other or others. F. A. Hall Co., Inc., 3 B. T. A. 1172; Matteawan Manufacturing Co., 4 B. T. A. 953; Kellog Commission Co., 6 B. T. A. 771; Fibre Container Co., 9 B. T. A. 575; Stetson & Ellison, 11 B. T. A. 397, affd., 43 Fed. (2d) 553; Matteawan Manufacturing Co., 14 B. T. A. 789; Converse Cooperage Co., 17 B. T. A. 1285; and Continental Oil Co., supra. If, however, the gross income and deductions of each corporation are not separately disclosed in the consolidated return, the Fifth Circuit has ruled otherwise, in United States v. National Tank & Export Co., 45 Fed. (2d) 1005; certiorari denied, 283 U. S. 839; and Lucas v. Colmer-Green Lumber Co., 49 Fed. (2d) 234. Cf. also Paso Robles Mercantile Co. v. Commissioner, 33 Fed. (2d) 653; Myles Salt Co. v. Commissioner, 49 Fed. (2d) 232; Goldman v. Commissioner, 51 Fed. (2d) 427; and Valentine-Clark Co. v. Commissioner, 52 Fed. (2d) 346.
The respondent, in support of his contention that the statute did not commence to run until the return mentioned in paragraph 47 was filed, has cited Pilliod Lumber Co., 281 U. S. 245; Norwich Woolen Mills Corp., 18 B. T. A. 303; Sweets Co. of America, 12 B. T. A. 1285; Green River Distilling Co., 16 B. T. A. 395; Fidelity National Bank & Trust Co. v. Commissioner, 39 Fed. (2d) 58; and Lucas v. St. Louis National Baseball Club, 42 Fed. (2d) 984.
*1276 The question in the first case just cited was whether the filing of an unsigned and unsworn return would start the statute running where section 239 of the Revenue Act of 1918 specifically provided that “ The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer.” The Supreme Court held in the negative. But this question is not involved in the instant proceedings, as all the returns in question met this requirement of the statute. The second case cited by the respondent is not in point, for the reason that the petitioner there was contending that a return filed by a corporation for the 9-month period ending December 81, 1920, should, nevertheless, be considered a return for 12 months ending March 31, 1921, in order that the statute might start to run from the daté of the filing of such return as to income earned between January 1, 1921, and March 7, 1921, when the corporation was dissolved. The other four cases cited by the respondent do not involve the question of whether the return filed in those cases was such a return as would start the statute running, and, therefore, need not be further considered.
As stated in our findiifgs, the gross income and deductions of The Northwestern Iron Company and The Newport Chemical Works, Inc., were fully reported in considerable detail in the consolidated returns of The Steel and Tube Company of America and The Newport Company, respectively, and, in view of what we have said above, we hold that the statute of limitations for making any assessment against such transferors started to run when the consolidated returns mentioned in paragraphs 42 to 45, inclusive, were filed.
The last two points relied upon by the respondent concern principally the determination whether The Youngstown Sheet and Tube Company or The Mayville Iron Company is the final transferee of the assets of The Northwestern Iron Company. As recited in our preliminary statement, the questions to be decided at this time were, by motion duly made and granted, limited to those arising under the statute of limitations. In view of our holding on the question of. the statute of limitations respecting the deficiencies determined against The Northwestern Iron Company, we do not-deem it necessary to further discuss these points even if they were, at this time, properly before us.
Applying the principles discussed above to the essential facts set out in our findings, we hold that the assessment of any taxes against the several transferors was or was not barred by the statute of limitations on the respective dates that the transferee notices were mailed to petitioners as set forth in the schedule below:
*1277 [[Image here]]
There is no evidence that any of the deficiencies shown in column (S) above were ever assessed against any of the said transferors, and since, as shown in column (10) above, the period within which an assessment of any taxes against any of the said transferors (except The Dunn Iron Mining Company and The Harvest Farms Company) expired prior to the passage of the Eevenue Act of 1926, the assessment and collection of the proposed liabilities for such taxes against petitioners as transferees are also barred. Caroline J. Shaw, Executrix, supra.
The period within which an assessment could be made against The Harvest Farms Company did not expire until after the passage of the Eevenue Act of 1926, and, therefore, the extra year provided for in section 280 (b) (1), supra, of the Eevenue Act of 1926 is applicable. Louis Costanzo, 16 B. T. A. 1294; J. A. Kemp, 20 B. T. A. 875. The respondent, therefore, had until December 31,1927, to notify a transferee of its liability for unpaid taxes of this corporation. Petitioners were notified on December 29, 1927, and, therefore, if they are liable as transferees, the notices to them were timely.
We, therefore, hold that the assessment and collection of all of the proposed liabilities against petitioners are barred by the statute of limitations except those relating to The Dunn Iron Mining Company *1278 (which petitioners have conceded are not barred provided they are liable as transferees) and The Harvest Farms Company.
Reviewed by the Board.

Further proceedings may be had upon the remaining issues contained in the pleadings.